FILED & ENTERED

JAN 04 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Cetulio    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Ronald Alvin Neff<br><br><br>Debtor(s). | Case No.: 1:11-bk-22424-GM<br><br>CHAPTER 7<br><br>**MEMORANDUM OF OPINION AFTER REMAND OF OBJECTION TO ENHANCED HOMESTEAD EXEMPTION**<br><br>Date:    November 21-22, 2017<br>Time:   9:00 AM<br>Courtroom: 303 |

    This is part of the ongoing dispute between Douglas Denoce and Ronald Neff, originating from a series of failed dental procedures. Mr. Denoce obtained a state court judgment for malpractice and has objected to Dr. Neff's claim of heightened exemption on his home. On December 17, 2012, Judge Kaufman ruled in favor of Denoce and held that Neff did not qualify for the heightened exemption, largely on the basis that on the date of bankruptcy he was able to work at gainful employment.[1] After cross-appeals, the BAP vacated and remanded in part the Exemption Order and did not rule on whether Neff should have been entitled to an evidentiary hearing.[2]

---

[1] Dkt. #147
[2] BAP CC-12-1664, CC-13-1017

After remand, Judge Kaufman transferred this matter to Judge Mund. I decided that an evidentiary hearing was warranted to clarify, refute, or fill in the BAP opinion.

In preparation for this evidentiary hearing, the Court granted Denoce extensive discovery opportunities. Thus, he chose an expert on the issue of Neff's mental status and set a date for Neff to be examined by that expert.[3] The day before the scheduled examination, Denoce cancelled it. No mental or physical examination of Neff was conducted in preparation for this evidentiary hearing.

Denoce also wanted access to the records held by the Social Security Administration (SSA) concerning Neff's physical and mental condition, especially the ones that the SSA used to base its decision to grant Neff disability benefits. He also, apparently, wanted something from the SSA that would show the basis of the calculation of the amount of the disability benefits. To accomplish this, he requested that Neff sign a waiver, which Neff did after the Court created a protective order and confidentiality agreement that had to be signed as well as a limitation on distribution beyond the parties and their experts.[4]

In the evidentiary hearing arguing admission of some of the documents produced at the Rule 2004 examination, Denoce stated that he went to the SSA office and requested the file, was given a disc of downloaded documents, but that it did not contain a complete record. Although he was required to transmit a copy to Michael Kwasigroch (Neff's attorney), he did not do so, but stated that he destroyed the disc because he was afraid of violating the Court's order and because Kwasigroch had not signed the confidentiality agreement. Thus, the only documents that had been marked as exhibits concerning the SSA determination were those produced by Neff at his 2004 examination on August 8, 2011. The Court ruled that these are hearsay could not be authenticated, and did not qualify under any exception, including that for business records.

---

[3] Dkt. #357, #364
[4] Dkt. ##329, 332, 339, 342, 348 and the various filings related to these

Similarly, on his witness list Neff had revealed the names of various doctors who had examined him and had prepared reports for the SSA.[5] There was a pre-trial dispute as to whether the witnesses could appear by phone so long as they had access to a computer and would be able to see impeachment documents that Denoce might use. However, this was resolved by the Court.[6] On the date of the evidentiary hearing, Mr. Kwasigroch advised the Court that he would not be calling any witnesses other than Dr. Neff.

The Order Setting Trial Dates specifically provided:

> To the extent that medical records are to be introduced, unless the Federal Rules of Evidence excuse appearance or the parties waive the appearance, the examining doctor is to be available by phone or in person for questioning by the parties. It is the burden of the party who seeks to introduce the medical testimony to obtain the appearance of the witness or explain the exception that allows the witness not to appear for examination.[7]

Because Denoce had not subpoenaed these doctors, their reports and other backup material that they had used was inadmissible. It should be noted that Mr. Denoce is a disbarred lawyer with extensive experience in malpractice actions, though he has not practiced in many years. In his objection of the Order Setting Trial Dates, he stated in his declaration:

> [T]his party is a former medical malpractice attorney, has a great deal of experience in taking medical expert testimony at trial, and has a well thought out strategy and reasons for examination of Debtor's proffered doctors/healthcare providers at this trial which, inter alia, involves detailed review with these doctors of medical records/evidence which is NOT in their files. In other words, without delving into his trial strategy too much, Declarant intends to impeach these individuals with documents about this Debtor's medical and other history, which would impeach his disability claims. One cannot review an independent record with a witness over the phone. For example, it is fully acceptable practice to cross examine an expert with a record, and ask that expert if he/she (1) knew about it and (2) if not, would it change his/her opinion. This simply cannot be done over the phone.[8]

---

[5] The reports were marked as Denoce's exhibits 18, 19A, 19E, and 19F
[6] Dkt. ##365, 368, 370, 372, 376
[7] Dkt. #365, ¶6. This was not modified in the any other order, specifically including dkt. #370.
[8] Dkt. 368, ¶4

Thus the Court finds no unfairness in Kwasigroch's trial strategy.

After much pre-hearing work concerning discovery, an evidentiary hearing was held on November 21 and 22. Douglas Denoce represented himself; Ronald Neff was represented by Michael Kwasigroch. The only witness was Dr. Neff. Although Denoce attempted to call Nick Scinocca, the senior investigator for the California Dental Board, the Court found that his testimony would be irrelevant to this claim of exemption. Only a part of his declaration was admitted into evidence.[9]

The basic facts are described on pages 2-15 of the opinion of the Bankruptcy Appellate Panel, filed February 4, 2014 (cross-appeals CC-12-1664-KiTaD and CC-13-1017-KiTaD). Much of that is background and not specifically related to the objection to the enhancement of the claim of exemption. To the extent that the stated facts are relevant, this Court finds few discrepancies as a result of the evidentiary hearing. One issue stated in the BAP opinion that is not supported by the evidence - in that there is a lack of evidence – is "Denoce disputed Neff's claim of a mental disability, *which was the sole basis for his SSA disability benefits,* arguing that such claim was suspect."[10] The Court cannot agree with this statement to the extent that the portion in italics (italics added by the Court) is a finding rather than a contention by Denoce. The only admitted SSA evidence is the Social Security Award Letter, which states no reason for the allowance of or determination of benefits.[11]

In reviewing the BAP opinion, it is clear that Judge Kaufman had little belief in the credibility of Neff, based on his previous actions concerning the transfer of property during the chapter 13 case and his failure to immediately claim the enhanced homestead exemption. In the present hearing and the motions leading up to it, Denoce largely focused on Neff's credibility. And this, or course, is something that the Court must consider.

---

[9] Movant's ex. 9
[10] BAP opinion, 10:20-22
[11] Debtor exhibit 104

1  Neff's testimony was consistent with his prior testimony. He described his
2  physical and mental issues in similar fashion to his June 17, 2011 testimony.[12] Given
3  the inadmissibility of medical reports and the failure to call experts to give independent
4  testimony or to interpret some of those reports[13], the Court must look to the testimony of
5  Neff and those documents that are in evidence. Neff admitted that he takes a
6  substantial amount of restricted drugs and medications on a daily basis. This did not
7  seem to impair his memory or testimony. Several times he described his physical and
8  mental impairments and the Court believes that these are accurate.

9  The burden was on Denoce to put on evidence that was sufficient to overcome
10 the presumption of impairment that was created by the SSA providing disability benefits
11 to Neff. He was unable to do that. Although he had every reason to believe that Neff's
12 attorney would call the doctors who wrote the reports, particularly since Judge Kaufman
13 believed that Neff should have had their declarations to introduce the reports and
14 because they were on Neff's witness list, Neff did not do so. Because the burden is on
15 Denoce to show through clear evidence that the SSA employees and the civilian
16 doctors did not do their duty, there is a total lack of evidence on this point. It is a classic
17 litigation technique to have the opposition rely on one of your witnesses and then fail to
18 call that witness. This is not wrongful. Denoce could have and should have
19 subpoenaed the doctors to appear or brought in his own experts, he failed to do so. As
20 stated in his trial brief.

> As noted, thus far this party has seen no admissible medical evidence of Neff's alleged disability. There have been no subpoenas issued by Debtor for custodians [of] records, etc. Creditor will assume he will have the psychiatrist and orthopedic physician testify. As noted above, it is submitted Debtor is being dishonest about his ability to work. However, if Debtor produces medical evidence to establish any disability, Creditor would submit the following analysis to support sustaining this Objection because he can clearly work at least part time, at a minimum.[14]:

---

[12] For a summary of that testimony, see BAP opinion, page 8.
[13] One glaring example deals with Movant's exhibit 18, which is a 2008 MRI report. Denoce argued that it demonstrated that Neff's claim of disc issues was false. However, the Court does not have the ability to interpret this document and there was no expert to do so. Therefore, the document was not admitted.
[14] Dkt # 378, p 24

-5-

Denoce erred in his conviction that the burden is on Neff to produce medical evidence. The mere existence of the SSA award shifts the responsibility to Denoce to overcome the presumption that a disability exists.

As to the SSA itself, although Denoce complained that the records that he received were incomplete, he destroyed all evidence of what he received. Further, he did not subpoena the custodian of records or anyone else from the SSA to testify as to their procedures in granting disability claims, the process actually followed in this case, or the basis for the amount of the monthly payments being received by Neff.

Neff may be the biggest liar in the world – although the Court does not find this to be the case – but that does not absolve Denoce of his burden to produce evidence of error by the SSA or error or wrongdoing by Neff or the examining doctors.

As noted by the BAP, the existence of a disability is only one of two prongs to claim the enhanced exemption under California law:

> CCP § 704.730(a)(3)(B) sets forth a two-part test to determine if a debtor is eligible for the disability exemption: the debtor must (1) have a physical or mental disability; and (2) as a result of that disability, be unable to engage in substantial gainful employment.[15]

Thus the other major issue here is whether, on the date of this bankruptcy petition, Neff was capable of "substantial gainful employment." It is unclear from the award letter whether the SSA granted Neff benefits under the Social Security Disability Insurance program (SSDI) or under Supplemental Security Income program (SSI). Both have similar requirements as to earning ability.

Basically, SSDI applies to individuals who have earned sufficient social security credits to be eligible for their social security benefits, but have not yet reached the minimum age to draw those benefits. This is described in 42 U.S.C. §423.

    (d) "Disability" defined

    (1) The term "disability" means--

---

[15] BAP opinion, 21:21-26

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months….r

(2) For purposes of paragraph (1)(A)--

(A) An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

(B) In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Commissioner of Social Security does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process.

(C) An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.

(3) For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

(4)(A) The Commissioner of Social Security shall by regulations prescribe the criteria for determining when services performed or earnings derived from services demonstrate an individual's ability to engage in substantial gainful activity. No individual who is blind shall be regarded as having demonstrated an ability to engage in substantial gainful activity on the basis of earnings that do not exceed an amount equal to the exempt amount which would be applicable under section 403(f)(8) of this title, to individuals described in subparagraph (D) thereof, if section 102 of the Senior Citizens' Right to Work Act of 1996 had not been enacted. Notwithstanding the provisions of paragraph (2), an individual whose

services or earnings meet such criteria shall, except for purposes of section 422(c) of this title, be found not to be disabled. In determining whether an individual is able to engage in substantial gainful activity by reason of his earnings, where his disability is sufficiently severe to result in a functional limitation requiring assistance in order for him to work, there shall be excluded from such earnings an amount equal to the cost (to such individual) of any attendant care services, medical devices, equipment, prostheses, and similar items and services (not including routine drugs or routine medical services unless such drugs or services are necessary for the control of the disabling condition) which are necessary (as determined by the Commissioner of Social Security in regulations) for that purpose, whether or not such assistance is also needed to enable him to carry out his normal daily functions; except that the amounts to be excluded shall be subject to such reasonable limits as the Commissioner of Social Security may prescribe.

42 U.S.C. §1382c is identical to the above except that it does not limit benefits if the disability is due to alcohol or drugs and it does not refer to the Senior Citizens' Right to Work Act.

The definition that is incumbent on the SSA as to "substantial gainful activity" is quite different for SSDI and SSI.  When applied to SSDI:

Substantial gainful activity means work that—
(a) Involves doing significant and productive physical or mental duties; and
(b) Is done (or intended) for pay or profit.
20 C.F.R. § 404.1510

However, when considered as to SSI:

Substantial gainful activity is work activity that is both substantial and gainful:
(a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.
(b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.
(c) Some other activities. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.
20 C.F.R. § 416.972

Therefore, it appears that the SSA determined that Neff could not perform even part-time work. However, there is no specific evidence of the findings of the SSA.

In his trial brief[16] Denoce relies on the case of *In re Rostler*, 169 B.R. 408, 413 (Bankr. C.D. Cal. 1994) for the proposition that "substantial gainful employment" does not require "that Debtor generate sufficient income for support for her to be considered gainfully employed. Rather, the relevant inquiry is whether she was engaged in a business that normally results in pay or profit." The BAP also deals with *Rostler*, but with a different result.

In this case, bankruptcy exemptions are determined under California, not Federal law. CCP § 704.730(a)(3)(B) allowed the increase exemption as follows:

> (3) One hundred seventy-five thousand dollars ($175,000) if the judgment debtor or spouse of the judgment debtor who resides in the homestead is at the time of the attempted sale of the homestead any one of the following:
> … (B) A person physically or mentally disabled who as a result of that disability is unable to engage in substantial gainful employment. There is a rebuttable presumption affecting the burden of proof that a person receiving disability insurance benefit payments under Title II or supplemental security income payments under Title XVI of the federal Social Security Act satisfies the requirements of this paragraph as to his or her inability to engage in substantial gainful employment.

Without clarifying how it fits into the language of the CFR, the BAP has instructed in this case that the word "substantial" also modifies the term "gainful" as well as "employment." This "suggests that the debtor must be physically, mentally and emotionally able to work enough hours, at a high enough net wage, to contribute materially to his or her support." Based on this, the test propounded by the BAP is as follows:

> As the objecting party, DeNoce was required to rebut the presumption that, <u>as of the petition date</u>, Neff was unable to engage in "substantial gainful employment" — i.e., that he had the ability to perform meaningful mental or physical work-related activity, in a competitive or self-employed position, which normally results in pay or profit, and that Neff was physically, mentally and

---

[16] Dkt. #378

emotionally able to work enough hours, at a high enough net wage, to contribute materially to his support. Neff's level of disability, whether only "partial" or "full," does not control the outcome of whether he is eligible for a disability homestead exemption. The pertinent question is whether his disability rendered him unable to engage in substantial gainful employment at the time he filed the Third Bankruptcy Case.[17]

Given the lack of independent evidence of Neff's physical condition, Denoce had to rely on Neff's prior statements of his desire to work and his qualifications to be employed in October 2011, when he filed this bankruptcy case. It is clear that in 2009 he wanted to continue to work as a dentist one or two days a week and even more in 2007. When he lost his license, he became much more limited. He cannot be a dental hygienist without a license to do so. He can work as a dental assistant, if anyone would hire him. This is doubtful given his age and the fact that he continues to use high doses of drugs that may be impairing his physical and mental abilities. He also testified to shakiness and a lack of fine motor coordination, which the Court finds would eliminate work as a dental assistant. While he has the knowledge to review claims for a dental insurance company, there is no evidence that he would be hired to do so.

As noted, Denoce brought in no third-party witnesses as to Neff's possibility of employment or the amount that he could earn. Neff gave the sole testimony on these subjects.[18] He testified that a dental assistant and office manager in 2010 could make $15 per hour and, on a full time basis, would receive about $30,000 per year.[19] In argument, both sides assert that Neff could function as a dental assistant about 40 hours per month (for Denoce this is a minimum and for Neff this is a maximum). This would be a gross salary of $600 per month. If he could work as a claims analyst, presumably he would receive a higher hourly wage and, although no one argued this, he could work more hours per week since this is done sitting down rather than standing

---

[17] BAP opinion 21:6-18; emphasis in original.
[18] It should be noted that Denoce could have introduced a variety of governmental or organizational reports that would have given figures for average salaries in various occupations, etc. in 2010 or even today. He did not do so.
[19] This appears to be a gross salary and not a net after-tax salary.

up. But there is no evidence as to the salary or his chances of obtaining such employment.

.         Without taking credibility into consideration, it appears to the Court that Neff is seriously disabled. In 1989 and 2010 he was in a drug and alcohol rehabilitation program   He is still highly dependent on drugs, taking a daily series of medications, including Oxycodone (10 mg twice a day), Xanax, Zoloft,  and morphine (30 mg continuous release each morning). He also has at least one criminal conviction. He testified that he could be capable of working as a dental assistant for about ten hours per week making a gross salary of $15 per hour. This is, of course, assuming that anyone would hire him. While the SSA looks to a variety of factors in determining whether to award disability payments, age and the probability of gainful employment are reviewed as to each individual applicant. Although he appeared to be able to work longer hours as a consultant for an insurance company, there is no evidence of the normal salary or that he would actually be hired for such a job – particularly given his criminal record, his history of alcohol and substance abuse, and his continued drug dependency. At the time that he filed this case, Neff was 59 or 60 years old.

The Court finds that his physical condition has been largely stable during the pendency of this bankruptcy case. Therefore no separate analysis must be made to backdate the findings to the date of filing the case or to the date of the approval of the SSA benefits.

Beyond his possible earnings as a dental assistant, Neff also received insurance payments from Northwestern Mutual under two policies: D421679 (overhead expense insurance) and D421664 (income replacement). The overhead expense insurance policy had a two year duration. It is unclear how long the income replacement policy was or would be in effect. There is also no evidence that the terms of this policy were not revealed to the SSA prior to the decision by that agency. Under the income

replacement policy, Neff received approximately $2,300 per month. The last evidence of payment is for the period ending March 30, 2010.[20]

Although usually applied in the context of criminal actions brought by the government, the general rule is that "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464, 116 S. Ct. 1480, 1486, 134 L. Ed. 2d 687 (1996) quoting *United States v. Chemical Foundation, Inc.,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926). This same proposition is also cited in *Bracy v. Gramley*, 520 U.S. 899, 909, 117 S.Ct. 1793, 1799 (1997).

A factual situation somewhat closer to the one before this court is the case of *Pasadena Research Laboratories, Inc. v. United States*, 169 F.2d 375 (9th Cir. 1948). Although also in a criminal context, the issue was whether adulterated and misbranded drugs that they had shipped into interstate commerce had been tampered with while in the possession of the government and its employees. Citing to *Chemical Foundation*, the court found that the presumption of official regularity applied to the methods used by the government employees and also to private individuals: "This presumption that even private individuals do their duty and exercise due care should apply a fortiori to doctors and nurses, whose professional training and traditions teach them to be meticulous in the handling of preparations that are to be administered to their patients." *Id.* at 382.

While the Court does not accept this to mean that the doctors who examined Neff could not or did not make a mistake in their analysis of his physical and mental condition or that the SSA employees did not err in determining that he was entitled to disability payments, it not only shifts the burden to Denoce to demonstrate that there were errors, but to do so by clear evidence that such errors occurred.

Although Denoce tried to do so, his evidentiary basis was lacking.

---

[20] Movant ex. 19(A), p. 109.

## SUMMARY

Denoce bears the burden of overcoming the SSA ruling. To do so he needs to show by clear evidence that the SSA did not properly discharge its duties when it found that Neff was entitled to disability benefits. This included both the necessary physical and mental problems, but also that he could not engage in substantial gainful employment.

There is a lack of admissible evidence as to the first issue. Neff's history shows a need for a significant daily ingestion of medication to handle his pain. He also has testified to mental issues that interfere with his ability to work.

As to the second issue, it appears that Neff was and is incapable of realistic employment. The only issue is whether that employment – if it were to exist – must be able to provide enough income to allow him to live, even at the poverty level. The SSA did not think so. When he filed bankruptcy, he was receiving about $1,922 per month in SSA disability payments. Obviously an earned income of some $600 per month would not prevent him from receiving these disability payments. As noted above, the Court does not know if Neff was continuing to receive the Northwestern Insurance income replacement payments once he obtained the SSA benefits or whether these would be put into the calculation of "substantial gainful employment." The Court cannot speculate and take into account this lack of evidence.

//
//
//
//
//
//
//
//
//

The Court need not determine whether the BAP's interpretation of CCP §704.730(3)(B) is correct or not. Gross income of $7,200 per year for an individual simply cannot be determined to be "substantial gainful employment."

####

Date: January 4, 2018

Geraldine Mund
United States Bankruptcy Judge