**FILED & ENTERED**

MAY 25 2018

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** Gonzalez **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Ronald Alvin Neff<br><br><br><br><br><br>Debtor(s). | Case No.: 1:11-bk-22424-GM<br><br>CHAPTER 7<br><br>**ORDER GRANTING IN PART AND DENYING IN PART THE MOTION FOR NEW TRIAL**<br><br>Date:    May 29, 2018<br>Time:    10:00 AM<br>Courtroom: 303 |

Pursuant to Local Bankruptcy Rule 9013-1(j)(3), the Court hereby dispenses with oral argument on this motion and also denies the DeNoce request for an evidentiary hearing allowing oral testimony on this motion.

On November 21 and 22, 2017, the Court held an evidentiary hearing on the objection to an enhanced homestead exemption in the bankruptcy of Ronald Neff. On January 4, 2018, the Court entered its Memorandum of Opinion and Order overruling the objection filed by Douglas DeNoce. On January 12, Mr. DeNoce filed this motion for new trial, to amend or alter the judgment, and/or for relief from the judgment. The stated bases of the motion are as follows:

1. There was false evidence and misconduct by Neff. (FRCP 59(a), 60(b))
2. There is newly discovered evidence (FRCP 59(a). 59(e), 60(b))
3. There was prejudicial conduct by the Court (FRCP 59(a))
4. There was unfair surprise or an unfair trial (FRCP 59(a))
5. There was factual or legal error (FRCP 59(e))
6. There was mistake, inadvertence, surprise or excusable neglect (FRCP 60(b))
7. There are other reasons justifying relief (FRCP 60(b))

On May 9, 2018, Mr. Kwasigroch filed his opposition. Mr. DeNoce's reply was received on May 24.

## Specific Issues

1. Prior findings by Judges Thompson and Kaufman

DeNoce is correct that it was Judge Thompson (not Judge Kaufman) who presided at the time of the transfer of property during the first bankruptcy case. As to Judge Kaufman's reasons for disbelieving Neff, she certainly had the information about the prior transfer, but she also had other reasons which she felt showed that Neff lacked credibility. However, such observations are not binding on a successor judge, though they are certainly something to take into consideration, which I did. But as the successor judge who was dealing with a very specific issue, I found Neff to be credible.

2. Doctors' Reports

A. Third session of the 2004 Examination

The transcript may have been lodged with the Court for trial, but trial evidence is not placed on the docket. To the extent that DeNoce wished to introduce statements in that transcript, he would have done so under the rules of evidence. But the reason that he raises this is to support his argument that the medical records were authenticated by Neff and should have been allowed into evidence. There was never a question of authentication or that Neff had copies of these records. He had previously produced

them and filed a copy with the Court.  The issue is whether they are admissible without the presence of the examining doctor.

### B. Copies from the Social Security Administration

The fact that these medical reports were "authenticated" by Neff in discovery and even produced by him, does not allow their admission into evidence.  He was neither the maker nor the recipient of the reports, but merely the subject of them who obtained a copy from the SSA.  Although Neff was trained and practicing as a dentist (apparently with a DDS degree), and the Court referred to him in the Memorandum and in court as "Doctor Neff," DeNoce argues that "[T]his Court is want [sic] to elevate this Debtor to the status of a doctor, and who better to authenticate his own medical records than a (former) doctor.  They were reliable." (Memorandum 9:21)  While there is no question that these examinations and the reports were prepared for the SSA by doctors authorized by the SSA to prepare such reports, as noted above their authenticity is not in question.  However, authenticity alone does not make them admissible.

### C. The Hearsay Rule

Even authentic documents are not admissible if they violate the hearsay rule. FRE 801(c).  The medical records are out of court statements, other than those of a declarant while testifying in this hearing, being offered in evidence to prove the truth of the matter asserted.  While Neff sought to challenge part of the content of these various medical reports, he also wanted to use other parts to support his contention that Neff was capable of working.  See for example the Objection to Exemption (dkt. 87, p. 28:22-29:6).

First there is an issue of whether they would be called as expert witnesses or percipient ones.  DeNoce labels them as expert witnesses and that may well be the case. (Dkt. 368, ¶4)

There are many exceptions to the hearsay rule, but these reports do not fall under any of them. Neff did not have control of these doctors and he did not even select them. They were hired by the SSA to provide information to the SSA on which the SSA (a third party to this proceeding) could make its disability determination. These are not records of a "party-opponent" so they do not fall under FRE 801(d)(2). *In re Hidden Lake Ltd. Pship*, 247 B.R. 722, 724 (Bankr. S.D.OH 2000).

In the asbestos-related case of *Kirk v. Raymark Indus., Inc.*, 61 F.3d 147,163 (3d Cir. 1995), the plaintiff read into evidence prior testimony of a doctor who had been an expert witness for the defendant in an unrelated state court asbestos action. This was being used to discredit the testimony of the defendant's current expert by showing the jury that the defendant's previous expert had offered a contradictory opinion. The Third Circuit found that this was inadmissible as hearsay in that the prior expert was not the agent of the defendant.

The medical reports in this case do not even qualify as prior testimony. They are not testimony at all, but are merely reports by examining physicians made at the request of the SSA for the benefit of the SSA. They are not admissible without the doctors in question being present in trial and being subject to examination by both parties.

DeNoce argues that FRE 807 would allow admission of the Goldsmith and Bilik SSA reports. The Court disagrees. Both are reports of examination by medical professionals – presumably well-qualified in their fields. The Court is not sufficiently educated in these areas to understand the implications of the diagnoses and assessments in these reports, particularly as they concern the issues presented as to the ability of Neff to earn a living. The doctors in question need to explain those implications and without that they are not probative of the facts and do not serve the interests of justice. Thus, they do not qualify for the residual exception.

The only other hearsay exception that the Court can conceive might apply is that of business records. But the reports are not admissible as business records of the doctors since they are not under oath so there is no "testimony" as to their creation that

it was (1) each doctor's practice to make the record, (2) kept in the regular course of business, (3) made by a person with knowledge, and (4) made at or near the time of the event recorded.  FRE 803(6).

The doctors' reports are not admissible since they are hearsay.

### D. Neff's failure to call the doctors to testify

DeNoce argues that these "were the Debtor's treating doctors, who Debtor and his counsel said, swore, would be testifying at trial…. Creditor was tricked, mislead [sic] to believe they would be called by the Debtor, at least telephonically." (Memorandum in support of Creditor's Motion, 9:6; 9:11).  DeNoce wants the opportunity to call them at a retrial.

DeNoce's statements are incorrect in two ways: these were not "Debtor's treating doctors," but only conducted examinations to evaluate Neff on behalf of the SSA and neither Neff nor Kwasigroch "swore" that they would testify at trial.  Because the list was originally in response to an interrogatory, it was verified under penalty of perjury. (Dkt. 375, p. 3-6)  But that does not make it a false oath of Neff or a guaranty of Kwasigroch's trial strategy.

DeNoce argues that Kwasigroch promised that he would be calling the SSA doctors.  One argument is that Kwasigroch had appealed Judge Kaufman's ruling denying an evidentiary hearing in part because he was denied the right to call the doctors.  Further, the list that Kwasigroch provided for trial included them.  The list filed by Kwasigroch (Dkt. 375) was a copy of Neff's answer to interrogatory #5 of the "Response to Interrogatories-Supplemental Regarding Witnesses for Trial," which was originally submitted over a year before trial.  He attached this to the witness and evidence list filed three weeks before trial.  The list was originally in response to the question to "[P]lease list all witnesses … who you will call at the evidentiary hearing on this Objection to Homestead Exemption claim." This cannot be seen as a guaranty of who Neff would actually call.

The pretrial disclosure of a witness list is a method to allow the opponent to prepare to examine the potential witnesses and to limit surprise witnesses except for purposes of impeachment. At best it prevents the parties from bringing in previously undisclosed witnesses or evidence, except for purposes of impeachment. It is not a guarantee that every exhibit listed will be introduced or every witness identified will be called.

Further, it should be noted that the proposed witness list for Neff did NOT include Doctors Goldsmith and Bilik. Only Dr. Okhovat is listed. (dkt. 375, p. 5). Thus there is no way that DeNoce could have relied on Kwasigroch to call Doctors Goldsmith and Bilik and possibly would have objected to them being called at that time.

While the witness list kept Kwasigroch's options open to call some doctors, DeNoce stated his strategy on October 20, 2017 when he filed his Objection to Order Setting Trial Dates (Dkt. 368, which is excerpted below). Certainly this gave Kwasigroch food for thought as to his strategy as he proceeded to trial and during the trial itself.

It is clear that DeNoce knew that no one is bound to actually call the witnesses disclosed on their list. However they are precluded from calling others who were not revealed. For example, three weeks before trial, DeNoce himself listed seven witnesses (with a brief description of what each would testify to), though he only attempted to call two of them. One of the proposed witnesses was Dr. Richard Sandor, who is described as follows: "Dr. Sandor is a Board Certified Psychiatrist who has in depth knowledge of the Debtor's medical history. He will testify as to the Debtor's claims of mental disability, his alleged inability to work, and all issues of alleged disability." (Dkt. 373). In actuality, Dr. Sandor is the Independent Medical Examiner who DeNoce selected to examine Neff. According to DeNoce's declaration in support of this motion for a new trial, the reason that he did not call Dr. Sandor was because of a lack of cooperation by Kwasigroch and by Neff that caused him to cancel the examination. (p. 22-23, ¶¶ 3-6). Assuming that this is accurately reported, DeNoce

could have asked to delay the trial until the examination was completed or sought sanctions. But he did neither.

When DeNoce became aware that Kwasigroch was not calling the examining doctors, he could have raised the issue and asked for a recess and an order to require the examination by Dr. Sandor, but he did not. When it became clear that the Court would not admit the SSA medical reports, he could have asked for time to obtain the independent examination of Neff. He did not. Because of the order allowing the examination and because DeNoce had listed Dr. Sandor on his proposed witness list, he could have asked for a continuance at the end of his case to obtain the independent examination and then Dr. Sandor's testimony. He did not do so. Thus, he deprived himself of an opportunity to present medical testimony or impeach the SSA medical records.[1]

3. Social Security Administration Records

The issue of the SSA records concerns more than the doctors' reports. DeNoce was also seeking information on an evaluation made by the SSA, the percent of disability, the basis of calculation of amount of payments, and any other information that their file may contain. Using the release procedure instead of a subpoena was a discovery issue and did not apply to the trial itself. DeNoce never sought a subpoena for trial. As to his assertion of being given only partial records by the SSA and the reason that he destroyed them, that is covered in the Memorandum of Opinion. Even if he had retained them, they would be inadmissible without a foundational declaration by the SSA.

4. Prior background and history of bad faith litigation tactics

---

[1] While the Court need not rule on this issue at this time, it is likely that Dr. Sandor could have reviewed and testified as to at least some of the prior medical reports in that an expert can rely on and testify about hearsay that is not, itself, admissible. Fed.R.Evid. 703.

DeNoce starts this motion with a description of the prior criminal behavior of Neff and the lack of cooperation of Neff and his attorney in the bankruptcy and discovery process.  Then, starting on p. 13, he again attempts to show that Kwasigroch acted unethically, "has been 'gunning' for this creditor, engaging in well laid plans and schemes to deprive him of his fair trial rights, his discovery rights, surprise him, trick him.  Yet Creditor was indisputably a patient that was wounded by his drug addled client."  He argues that the Court should find that this is a pattern of bad faith tactics.

Kwasigroch's opposition begins by disputing the attacks on himself and on the Court.  The focus by both sides on these issues is unfortunate, but animus between parties, counsel, and counsel to parties is not unknown in this or any other court.  However it is not bad faith to maneuver to one's advantage or the advantage of one's client, so long as it is done within the allowed rules and processes.  There is nothing sanctionable about the trial strategy used by Kwasigroch.

As to holding DeNoce to the standard of a practicing attorney, the Court would not even be aware that he had been an attorney or that his specialty was medical malpractice had he not so advised the Court.  (Dkt. 368. ¶4):

> [T]his party is a former medical malpractice attorney, has a great deal of experience in taking medical expert testimony at trial, and has a well thought out strategy and reasons for examination of Debtor's proffered doctors/healthcare providers at this trial which, inter alia, involves detailed review with these doctors of medical records/evidence which is NOT in their files. In other words, without delving into his trial strategy too much, Declarant intends to impeach these individuals with documents about this Debtor's medical and other history, which would impeach his disability claims. One cannot review an independent record with a witness over the phone. For example, it is fully acceptable practice to cross examine an expert with a record, and ask that expert if he/she (1) knew about it and (2) if not, would it change his/her opinion. This simply cannot be done over the phone.

Had he had no legal experience, I would have ruled the same.  While pro se litigants are not held to the same stringent standard of pleading as an attorney,[2] this

---
[2] *Hughes c. Rowe,* 449 U.S. 5, 9 (1980)

-8-

was not an issue of pleading.[3]  Forgetting that DeNoce has had legal training and extensive medical malpractice litigation experience (although apparently some time ago), whether being treated as a competent litigator (as he held himself out to be) or as a pro se with no courtroom experience, had he asked for a recess so that he could subpoena the "missing" witnesses, I probably would have allowed that.  But DeNoce never asked. He just finished presenting his case and rested. It is not the Court's role to help him present his case, nor to bend the rules of evidence in his favor when he fails to comply with them.

The only additional testimony here would be to allow DeNoce to call witnesses who were not on his list.[4]  Although they were not all on the Neff list, their physical presence at trial was discussed in open court.  FRCP 60(b)(1) [incorporated in FRBP 9024] is meant to be liberally applied.  However the Court must look at the detriment to the other side.  Here there clearly was a mistake on DeNoce's part in not asking for a recess to call the doctors.  It was also a mistake not to make sure that they were on his witness list.  However there is no prejudice to Neff to now allow the trial to continue so that DeNoce can call the doctors as witnesses.  Neff is aware of their testimony and – but for a strategy – had intended to call them himself.  In fact, this is something that he had requested and was part of his appeal of Judge Kaufman's order.

But there is no such reason to allow DeNoce to now seek to subpoena and introduce the SSA records.  He failed to follow the Court's requirements to obtain and turnover a copy.  Since he destroyed them, it is likely that they did not help his case (this could be because they were explicitly opposed to what he believed or simply so neutral or limited that they provided no meaningful evidence).  Either way, he had them in his hands, but he never attempted to use or reveal them to the Court or the other

---

[3] *Jacobsen v. Filler*, 790 F.2d 1362 (9th Cir. 1986) makes it clear that when it comes to an evidentiary matter – in that case a motion for summary judgment - the trial court has no obligation to inform a pro se litigant of the proper procedure to introduce admissible evidence.  While the opinion states that a motion to reconsider to set aside the judgment may be filed, it does not go on to discuss whether the trial court must grant it.

[4] Due to the length of this dispute and the fact that I am the third judge to deal with the various Neff cases, I am not sure whether DeNoce previously objected to admitting the medical reports or calling the doctors.  He certainly opposed having an evidentiary hearing, which the BAP later said was required.

side. At this point it would be unfair to allow the introduction of any records from the SSA which had not already been in the possession of Neff.

There is a dispute as to why the examination by Dr. Sandor never took place. But that should have been resolved by motion prior to the trial. DeNoce decided to proceed without this. No examination by an IME is to occur. There will be no further discovery by either side.

The issue of misconduct by the opposition is dealt with above. There was no misconduct – merely smart lawyering.

There is no newly discovered evidence. The evidence has been in DeNoce's possession for several years. It was just inadmissible without proper evidentiary foundation. It will remain so unless DeNoce properly introduces it.

DeNoce contends that there was prejudicial misconduct by the Court, referring to a comment made at the August 30, 2016 hearing, that he characterizes as "[W]hy don't you just give up."[5] The transcript shows the actual interaction, which was in the context of a hearing on the terms of pretrial preparation. Neff had given his witness list and summary of the testimony of each proposed witness along with all documents and the Court commented as follows:

> THE COURT: And I know this has been a difficult contentious case, but when you look at the documents and when you depose one or two people -- you may not need to depose all eight -- when you depose one or two people if they really support what the documents say and if the documents show that he's entitled to his disability exemption, give up. I mean, exactly what's the point? Okay. Because if you've got -- if you find that that's true -- if you find that it's not true, that's a different matter.
> MR. DENOCE: This is --
> THE COURT: Okay. Or if you have other evidence.
> MR. DENOCE: This is a dentist who operated on me while he was under the influence of drugs and --
> THE COURT: That has nothing --
> MR. DENOCE: -- did surgery on me.
> THE COURT: That has nothing to do with this.
> MR. DENOCE: And he lost his dental license because of his drug addiction --
> THE COURT: I understand that.

---

[5] Dkt. 392, Motion, p. 18, l. 9

Case 1:11-bk-22424-GM    Doc 412    Filed 05/25/18    Entered 05/25/18 12:25:37    Desc
Main Document    Page 11 of 14

>MR. DENOCE: -- not because of his disability and that's the claim here.
>THE COURT: I understand that. But the disability -- the disability exemption under state law is a different matter. Okay. You have to understand that. I understand -- I read the case. I read what you've said. I read the background. I know what he did. I know how you got your judgment. I know why you got your judgment. I know that he has been no longer able to practice dentistry. But if he is, in fact, meets the state requirements for disability then the disability exemption, the higher exemption, he does. That's all there is -- that's all there is to it.
>And if it was -- that was caused by drugs unless there's something in state law and I do not know the state law on this. I'll learn it. I don't know it yet. Unless there's something in state law that says that if the cause of the disability is because you did it to yourself, if he's disabled, he's disabled. So I just want you to look at it --
>MR. DENOCE: I understand.
>THE COURT: -- and be realistic before you throw money at a lot of depositions and so on and so forth that you may never get anything back on.
>….
>THE COURT: I don't know -- I don't know. Okay. I'm just telling you before -- because you will most likely not get fees. You would not get counsel fees reimbursed. Even if you prevail you probably won't. Again, I may be wrong on that. Certainly if you don't prevail you won't, but you may not get them even if you prevail.
>So the question is, how much money do you want to throw at this. That's what you have to decide after you look at the evidence. Okay. Thank you. We will see you in October.

Transcript of Hearing of 8/30/16, Dkt. 396, 6:8-7:25; 8:11-20.


DeNoce also complains that the Court referred to him as a "disbarred lawyer" rather than a "former attorney" and persisted in referring to Neff as "doctor." The Court did comment at the beginning of the trial that although Neff had lost his license, he still had the title of doctor. And thus it was appropriate to call him Dr. Neff. DeNoce was referred to and called Mr. DeNoce. This was not a matter of deference, but of common courtesy. But beyond that, there was no jury present to be influenced by the knowledge that DeNoce no longer practiced law due to disbarment rather than retirement or that Neff had not been stripped of his educational degree.

5.  Neff did not sign the substitution of attorney "rehiring" Kwasigroch

-11-

While the signature on docket #397 does not match that on other substitutions of attorney, it also contains elements that do reflect the other signatures. The Court is not a handwriting expert, but given the testimony of Neff during the trial, it is likely that this discrepancy is a result of his physical disabilities.

### Ruling

Because courts have held that a motion for new trial should be liberally granted if the movant made a mistake, this Court believes that DeNoce should be given the opportunity to examine the SSA doctors, who he expected to be available for examination.

Grant as to the mistake in not calling the doctors. Deny on all other grounds.

Although DeNoce identifies three doctors who he wishes to call (Okhovat, Goldsmith, and Bilik), the debtor's witness list does not include Doctors Goldsmith and Bilik, so there is no reason that DeNoce could or should have relied on the witness list as to those doctors. Nonetheless, the Court will allow them as a result of further mistake or excusable neglect on the part of DeNoce.

This will be no more than a one day continued trial. Although DeNoce limits his request to Doctors Goldsmith, Okovhat, and Bilik, the Court will also allow him – should he wish - to recall Neff. This will be deemed to be part of DeNoce's case in chief. The further examination of Neff will be limited to specific testimony given by the medical witnesses and will not include areas already covered in his prior examination of Neff.

In his opposition case, Kwasigroch may also recall Neff, any person on his witness list, and/ or any other witness solely for impeachment.

So that I am assured of a courtroom, the continued trial can be on any of the following dates: June 27, 28, 29; July 30, 31; August 8, 9, 10, 13, 14, 20, 21, 22, 23, 24, 27.

By June 4, Kwasigroch is to notify DeNoce of any of those dates on which he or Neff would not be available for trial and the reason for unavailability (ie. trial, vacation). On June 5, 2018 at 10:00 a.m. there will be a trial status conference to ascertain that

there are at least five available dates (but not all in contiguous weeks).  It will then be up to DeNoce to ascertain the availability of each of the doctor(s) who he wishes to call and coordinate at least three dates when they will be available.  These are not to be in the same week.  By June 15, DeNoce is to advise Kwasigroch and the Court of the possible trial dates and identify which doctor(s) he will be calling. Should Kwasigroch wish to call any or all of the doctor(s) not selected by DeNoce, he may do so, as long as he schedules that for one of the three (or more) dates provided by DeNoce as required by this paragraph.

There will be a hearing on June 19, 2018 at 10:00 a.m. to finalize the continued trial date.  At that time Kwasigroch is to identify to DeNoce and the Court which doctor(s), if any, he may call for purposes of rebuttal.  At that hearing the Court will determine whether the various doctors are being called as expert witnesses or percipient witnesses.

DeNoce and Kwasigroch are invited to attend the above hearings in person or by phone.

It is DeNoce's responsibility to produce at trial whichever doctor(s) he wishes to examine and Kwasigroch's responsibility to produce whichever doctor(s), if any, he wishes to examine.  Each can do this by personal appearance or by phone under the method previously determined by the Court (dkt. 370, p. 3, l. 3-16).  Please review the requirements for subpoenaing witness for trial.  Failure of a witness to appear will not be grounds to continue unless the proper procedures for subpoenaing that witness were used.

//
//
//
//
//
//

As to Kwasigroch's request for attorney fees due to this motion, there will be no ruling at this time. It may be raised again in the future if DeNoce's actions warrant it.

###

Date: May 25, 2018

Geraldine Mund
United States Bankruptcy Judge