

FILED & ENTERED

MAY 09 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Ronald Alvin Neff<br><br>Debtor(s). | Case No.: 1:11-bk-22424-GM<br><br>CHAPTER 7<br><br>**RULING ON APPLICATION TO CLOSE EVIDENCE AND FOR FINAL RULING AND ON REQUEST FOR RELEASE OF COURTROOM VIDEO**<br><br>Date:    May 7, 2019<br>Time:    10:00 AM<br>Courtroom: 303 |

On May 7, the Court held hearings on several matters concerning the objection to enhanced exemption of Ronald Neff.  Prior to that hearing, the parties were sent a tentative ruling.[1]  In response thereto, Douglas DeNoce communicated by email with Geralyn Gulseth, counsel for the Social Security Administration in this matter.[2]

Oral argument took about an hour, after which the Court adopted the tentative ruling and orally added additional analyses.  Those are on the record and should be

---

[1] Dkt. 523
[2] Dkt. 525

-1-

used as a supplement and clarification to this written ruling. This final ruling is largely identical to the tentative ruling, but has been expanded to clarify, as needed.

## MOTION TO CLOSE EVIDENCE AND FOR FINAL RULING

On April 15, 2019 Debtor Ronald Neff filed an application/request that the Court terminate evidence at the end of Dr. Hersel's testimony and proceed to rule on the objection to enhanced exemption.[3] On April 11, 2019, Neff had filed a similar motion as an objection to Dr. Hersel's continued testimony and an objection to DeNoce's continued efforts to obtain records from the Social Security Administration [SSA].[4] The Court prepared a tentative ruling on the initial motion which was posted for the continued evidentiary hearing of April 15. At that time, the Court adopted its tentative ruling as to specific evidentiary objections. Although it had also posted a proposed tentative ruling on the additional issues of the SSA records, etc., the Court did not hear that part of the matter due to the lack of time for Douglas DeNoce to review and respond to the motion.

Since that time, the Court has received and reviewed the DeNoce opposition to the motion to terminate evidence.[5] The Court also has reviewed its Memorandum of Opinion After Remand[6] and its Order granting in Part and Denying in Part the Motion for New Trial[7]. Since then events have occurred which require me to modify my determination of what can take place from this point forward.

DeNoce argues that this is a disguised motion to reconsider and is not in the proper procedural format. The Court does not agree. The evidentiary hearing is an ongoing matter and the rulings that were made under one set of circumstances may need modification as the hearing goes forward. Thus, for example, the initial

---

[3] Dkt. 510
[4] Dkt. 508 [the initial motion]
[5] Dkt. 519
[6] Dkt. 386
[7] Dkt. 412

determination as to allowing testimony by Dr. Bilik is no longer relevant given the quashing of the subpoena for his appearance.

As I stated at the May 7 hearing, some of the decisions that I made as to what matters could go forward were because I forgot that this case is no longer subject to discovery, all pretrial discovery having been completed several years ago. Also the further allowed testimony is only a response to the motion for new trial, which was granted in part and denied in part.[8] Specifically, DeNoce was allowed to call Doctors Okhavat, Goldsmith, and Bilik (even though Bilik was not on anyone's witness list). The Court also allowed him to recall Neff for limited further examination based on the medical testimony to be elicited from the doctors. This is deemed to be part of DeNoce's case-in-chief.[9] All other portions of the motion for new trial were denied.

The specific need to call these doctors was so that their medical reports could come into evidence. But I allowed DeNoce much wider latitude and he did an extensive examination of Dr. Okovhat and Hetsel (who was not part of his motion for new trial, but was one of the doctors whose reports presumably were given to the SSA and is a treating physician of Neff in the area of pain management). Dr. Goldsmith is deceased and DeNoce attempted tp subpoena his filed, but they were never produced.

During the trial, DeNoce never indicated that he did not have a complete set of the SSA records, but the problem presented was the hearsay nature of what he did have. In his motion for new trial, he raised the issue of the SSA records, but the Court denied his motion as to that.[10]

When Ms. Gulseth indicated that DeNoce may not have received the entire SSA file in his initial request for the SSA documents, DeNoce once again asked that Neff sign a waiver so that DeNoce can receive them because the first waiver was stale. At first I thought that discovery was still open and thus it would be appropriate to ask for this second waiver, which Neff seemed willing to give. But once Neff withdrew his

---

[8] Dkt. 390, 392, 412
[9] Dkt. 412, p. 12
[10] Dkt. 412, p. 7

-3-

consent, it became clear to me that this was unwarranted additional discovery after DeNoce had rested and that his alleged failure to obtain all of the documents at the time of the original request could not be corroborated because he (1) acted as though he had received everything and (2) destroyed the SSA production.  Thus, at the time of this hearing on May 7, the Court is aware that discovery has closed except as to the testimony of the two examining physicians, the psychological examination of Neff at the time of the SSA determination, and a limited further cross-examination of Neff.

(1) <u>As to the records from the Social Security Administration</u>:

Previously Neff signed a release for the SSA records.  DeNoce obtained those records and apparently provided them to his physician consultants.  In his declaration re:status filed on June 26, 2017, DeNoce described going to the SSA office on April 17, 2017 and meeting with Claims Representative Ms. Arcia.  After a delay of some weeks, DeNoce was told to come in and obtain the records on June 5, 2017, which he did:

> After finally obtaining the SSA records on June 5th., Declarant promptly called his consultants to schedule an appointment, give them the records, get signed Confidentiality Agreement, etc.  One was out of town on vacation and Declarant expects to meet with that Dr. Shortly [sic].
> Declarant was given an appointment date of June 21st. to meet with his other consultant.  He did so and after he signed the Confidentiality Agreement, gave him the records to review.  That was last Thursday.  Declarant expects to hear back from him regarding his review and recommendations/opinions, etc.
> Declarant anticipates that one or both of his consultants will want to examine Debtor Neff after they have completed their review.[11]

A month later, on July 27, 2017, DeNoce filed a unilateral status report in which he stated:

> The present posture of this case is that the written discovery is now completed.
> Further, the Social Security Administration ("SSA") disability records of the Debtor have now been obtained, after much delay by the SSA.  They were only

---
[11] Dkt. 354, 4:19-5:2

provided on June 5, 2017.  The herculean efforts to obtain them is a matter of record.

Creditor has now met with his consultant, reviewed those records, and is ready to move forward to the medical evaluation of debtor's disability claim.  Creditor has now concurrently filed a Motion for a Mental examination, set for hearing on September 19, 2017.[12]

At some time between July 27, 2017 and November 22, 2017, DeNoce told the Court that he went to the SSA office, requested the file, and was given a disc of the records, which he took and reviewed.  He stated that he found that the material was incomplete.  He then destroyed the disc and neither sent it to Kwasigroch nor sought instruction from the Court.  At this time I cannot find that exact colloquy, but on November 22, 2017 – the second day of trial – DeNoce stated that "I got a couple of office file notes."[13]  This does not fit in with his prior filed statements of having a group of records to pass on to his experts and his lack of assertion that the file he received was incomplete.

It was DeNoce's decision to destroy the SSA records.  If he believed that the SSA did not give him the full file, he had options at that time, but he failed to invoke them.  Obviously DeNoce had plenty of time to review the SSA documents and if he has destroyed them, it was an intentional act and cannot now be undone unless Mr. Neff consents to the SSA providing another set of its records.

Although Neff had said that he would sign a new release (the old one having become stale through the passage of time), he has now changed his mind.  He is not bound by his prior statement as DeNoce has not relied on it to his detriment.  DeNoce's arguments of reliance deal only with information that he learned as part of the attempt to subpoena Dr. Bilik, which was after the trial was complete except for the ruling on the motion for new trial.  The time for general discovery of the SSA files has long since passed.

---

[12] Dkt. 360, p. 4
[13] Recording of 11/22/17, 3:39 pm and following

In his opposition, DeNoce argues that the new releases are needed so that the SSA can provide certified copies that will now be admissible because they are clearly authentic. Authenticity was never the issue as to copies of documents provided by Neff – hearsay is and was. However, to the extent that DeNoce may have received other records from the SSA, there might be an authenticity issue. But since he destroyed all of those records, there is nothing to introduce. Since the Court does not know what documents were already given to DeNoce, it cannot speculate on whether they would indeed meet the business records exception to the hearsay rule, which is what Ms. Gulseth discusses. Copies of medical reports are already marked as exhibits (though not admitted into evidence). It is possible that they or some part of them might be admissible under the business records or some other exception to the hearsay rule. DeNoce is free to seek admission in that manner and Neff can certainly argue the contrary.

Beyond that, we do not know whether a new SSA production would be any different from the first one. DeNoce argues that, based on the guidance of Ms. Gulseth, this time he will be more specific as to the documents requested. But there is no evidence of documents not previously known and provided to him. As he stated in his declaration filed on June 26, 2017, DeNoce met with Claims Representative Arcia at the SSA and later spoke to her supervisor, Kyle Goodwin. After much delay, "Mr. Goodwin contacted me, and set an appointment for me to come in and obtain the records on June 5, 2017, which I did." Thereafter DeNoce set up an appointment with his consultants to begin the process of giving the records to them.[14]

On June 5, 2017, DeNoce obtained the SSA disc of the records. Since DeNoce was intensely interested in the basis of the SSA determination of disability, had there been only medical reports or irrelevant papers in the SSA production, it is inconceivable that DeNoce would not immediately have contacted Mr. Goodwin and demanded additional documents. On June 26, three weeks after the production, DeNoce never

---

[14] Dkt. 354, p. 4

-6-

said anything about an incomplete production or that records were missing. Rather, he waited at least a month after his June 26 declaration and at least a minimum of two months after he received the SSA disc to state that the production was incomplete and he only made that statement to justify the fact that he had not turned over copies to Kwasigroch, thus asserting that he had destroyed the disc.

Discovery has long-since closed and DeNoce had what he requested from the SSA, used it for his own medical review, and destroyed it. The Court does not find justification for requiring Neff to allow discovery to continue as to the SSA file. DeNoce had his chance and that time has passed.

As discussed in the Memorandum of Opinion After Remand of Objection to Enhanced Homestead Exemption, there is a presumption that government employees have properly discharged their official duties.[15] In this situation, the SSA was required to compile and turn over certain papers and the presumption is that they did. Since we have no copy of what was actually given to DeNoce, there is no way to overcome the presumption that he received everything that he requested. And if he erroneously failed to request all documents on which the determination of disability was made and any report or findings of the determination of disability, that was his error. Although he attempts to blame Kwasigroch for the language in the Neff waiver to the SSA, almost two years have passed since the turnover and the case has had days of trial. It is simply too late to revisit this issue.

Kwasigroch raises the evidentiary issue of spoliation (which he incorrectly writes as spoilation). This is a presumption that the destruction of evidence relevant to the litigated issue shows that the evidence was unfavorable to that party. *Weinstein Federal Evidence §301.06.* That does not apply in this case since the SSA file is even more accessible to Neff, who need merely request it. Thus, if Neff believes that it is favorable to him, he has the ability to know what is in it and to produce it to the Court.

---

[15] Dkt. 386, 12:3-12:19; see *United States v. Armstrong*, 517 U.S. 456, 464, 116 S. Ct. 1480, 1486, 134 L. Ed. 2d 687 (1996) quoting *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926); *Bracy v. Gramley*, 520 U.S. 899, 909, 117 S.Ct. 1793, 1799 (1997); and *Pasadena Research Laboratories, Inc. v. United States*, 169 F.2d 375 (9th Cir. 1948).

DeNoce continues to argue that Kwasigroch does not act in good faith. Kwasigroch has every right to vigorously defend his client and to change his position and arguments as needed as the case progresses. DeNoce has also shifted to new grounds, etc. as he saw fit. Should these changes be relied on to the detriment of the other party, the Court might not allow them. But that reliance must be reasonable and there must be actual detriment. DeNoce argues that he needs the SSA certified copy of the Goldsmith report and that he relied on that since the Canyon Medical Group subpoena was not complied with. Once again, the issue that he raises is authentication and not hearsay. If authentication really was the issue, we could reinstitute the OSC on Canyon Medical. But it is not. No one is arguing that the copy of the Goldsmith report[16] is not identical to what Dr. Goldsmith provided to the SSA.

As noted by Ms. Gulseth, Dr. Bilik's report (a review of Dr. Goldsmith's report) was only one small piece of the SSA determination and "it wouldn't rebut the determination the Social Security made because his [Bilik's] one small piece of it was just that."[17]

DeNoce argues that he was told by the SSA that he needed three types of releases, but this is not supported by exhibit 4 to his opposition. Actually he may have needed a release that included the entire description above Neff's signature and this required three release forms since the form has very little room for the description of individual records. Nonetheless, we don't know what he got in his initial request, but certainly it was more than just the few medical reports. In his opposition to this motion DeNoce states that "he told the Court previously that he got no records, a mish-mash from a busy clerk at a window with no certification."[18] See the analysis above as to this assertion.

(2) <u>An Independent Psychiatrist</u>

---

[16] Ex. 110
[17] Hearing 1/8/19; dkt. 516, 15:1-3
[18] Dkt. 519, 17:25-28

At the trial, Neff testified that he met with Dr. Goldsmith, who was an SSA psychiatrist and whose report is at Ex. 110.  Although the report was never admitted, Neff testified at length about what he told Dr. Goldsmith.  He apparently had only one session with Dr. Goldsmith, which was for the purpose of seeking SSA benefits and for that evaluation.  The Court has been advised that Dr. Goldsmith is deceased.

As part of the SSA process, the SSA had Dr. Bilik do a review of the Goldsmith report.  That was also not admitted since Dr. Bilik was not called as a witness to allow cross-examination.

It is possible that some portions of the Goldsmith and Bilik reports can be admitted under Evidence Code §803(4).  However this appears to limit the portions to statements made by Neff as to his medical history, etc. and not to the conclusions drawn by the doctors who are not available to testify.

When considering the motion for new trial, in order to allow the full Bilik report to be admitted, the Court later allowed DeNoce to subpoena Dr. Bilik even though he was on neither witness list.  This resulted in motions and cross-motions when the U.S. Attorney successfully quashed the subpoena.  DeNoce was advised of his right to file an administrative law action to seek to overrule the determination that Dr. Bilik will not be allowed to testify.  For strategic reasons, DeNoce has chosen to delay going forward in this way.  The Court also gave him the option to hire his own psychiatrist to do a review of Dr. Goldsmith's and Dr. Bilik's reports.  He has also delayed this determination.

Because this is only one of many cases and because of the length of time involved, the Court had forgotten that on June 26, 2107 DeNoce declared that he had previously hired two medical consultants to review the SSA production.[19]  At the hearing on May 7, DeNoce clarified that he had, indeed, consulted with two doctors.  One was Dr. Sandor and he did not identify the other.  Apparently one of the doctors said that he is too old to want to testify.  DeNoce stated that the other doctor did not feel qualified to

---

[19] See quotation set forth on p. 4 above

-9-

do a review (it is unclear as to whether this was of the Goldsmith report and/or the Bilik one). The Court also does not know what additional information DeNoce may have given to these consultants and whether either gave DeNoce an opinion, whether orally or in writing.

Before the trial, DeNoce was allowed to hire an independent psychiatrist to examine Neff. He hired Dr. Sandor (now identified as one of the consultants described above), scheduled and then cancelled the examination of Neff and never sought to go forward with it. The trial went forward without any psychiatric examination of Neff and on November 22, 2017, DeNoce rested his case-in-chief. Thus, at this time, he will not be allowed to hire a psychiatrist to actually conduct an examination of Neff.

As to an expert review of the Bilik and Goldsmith reports, because Bilik cannot testify, I will allow DeNoce to call one or both of the experts he hired in.[20] Instead, he may hire another psychiatrist to conduct the review of the Goldsmith and Bilik reports. The review psychiatrist is to prepare a written report and on or before June 3, 2019, DeNoce is to provide Kwasigroch and the Court (by email) with a copy of the written report(s) that the witness prepared. DeNoce is also to provide all correspondence between DeNoce and the initial two consultants and among DeNoce and the initial two consultants as well as any reports that they prepared.

As to this new review psychiatrist, upon receiving a signed confidentiality report, DeNoce is not to provide him/her with any information about this case or about Neff, other than the Goldsmith and Bilik reports. He is not to discuss with him/her his thoughts or impressions, the dental board findings, any other medical evidence, etc. He may tell that doctor that these reports were part of the SSA file as to disability determination. To the extent that he previously provided Dr. Sandor or his other consultant with information about this case, etc. they may be disqualified as potential witnesses.

---

[20] If Dr. Sandor was one of the unnamed consultants and he was on the witness list.

-10-

(3) <u>An appeal under the Administrative Procedures Act</u>

I do not know the time limit to file an action in the district court under the Administrative Procedures Act (APA) as to Dr. Bilik. If DeNoce is seeking to appeal that SSA decision, he can go forward with that, but I will not delay the testimony of a review psychiatrist any further. Both can proceed simultaneously. If DeNoce chooses not to comply with part two above, he can argue for admission of part or all of the Goldsmith and Bilik reports. The appeal under the APA will not delay this trial.

(4) <u>Recall of Mr. Neff</u>

As previously ordered, I will allow either side to recall Neff at the conclusion of the medical testimony, but that examination is limited to the medical testimony and records provided by Dr. Okhavat, Dr. Hersel, and the psychiatric expert (should there be one).[21]

## **REQUEST FOR RELEASE OF COURTROOM VIDEO**

This request by DeNoce is for purposes of providing evidence that Mr. Neff was able to sit through the various hearings and walk in and out of the courtroom with no signs of discomfort or disability.

The request is denied for a variety of reasons.

(1) Most or all of the tapes no longer exist. These are recorded-over a week or two after they are made.

(2) There are no tapes of the area outside the courtroom and the ones in the courtroom have a limited view since they are focused on the bench area for security purposes.

(3) The tapes of the courtroom are made from the back of the courtroom and you cannot see the faces or bodies of people at the counsel tables except from the back or sides of the chairs.

---

[21] Dkt. 412, 12:16-20

(4) The Court takes a recess at least every two hours and so there would be little or no evidence that Mr. Neff remained seated for 4+ hours at a time.

(5) The Court can clearly see Mr. Neff and is aware that he is not requesting recesses or groaning in pain.  That does not indicate that he is not uncomfortable or the level of work that he is capable of undertaking on a continuous basis.

(6) The tapes are not evidence that is reasonably probative of the level of work that Neff is capable of undertaking on a continuous basis.

### **FURTHER EVIDENCE OBJECTIONS AND ARGUMENT FOR ADMISSIBILITY AND NON-ADMISSIBILITY OF CERTAIN EVIDENCE AND EXHIBITS**

This was filed on April 29 and set for hearing on May 7.  To the extent that evidence is closed, I will take this as a part of final arguments.

### **THE NEXT HEARING**

The next hearing in this case will be the status conference on June 18, 2019 at 1:30 p.m. at which time the Court will set a date for the testimony of the review psychiatrist, if any, for motions as to admission of all or part of the Bilik and Goldsmtih reports, and for the final examination of Neff.

###

Date: May 9, 2019

_____
Geraldine Mund
United States Bankruptcy Judge