

**FILED & ENTERED**

JUN 20 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re: | Case No.: 1:11-bk-22424-GM |
| Ronald Alvin Neff | CHAPTER 7 |
| | **ORDER OVERRULING OBJECTIONS TO RULING/ORDER ENTERED MAY 9, 2019 (dkt. 527)** |
| Debtor(s). | Date:   June 18, 2019<br>Time:   1:30 pm<br>Courtroom:  302 |

On May 16, 2019, Douglas DeNoce filed objections to ruling/order entered May 9, 2019 (docket no. 527) and a request for hearing on the objections. [Docket #532]. On May 31, 2019 the Court entered its order setting a hearing on the objections for June 18, 2019, gave notice and set dates for any written opposition and reply. [Docket/ #541].  No opposition was filed and therefore no reply was filed.  At the hearing on June 18, the Court submitted the objections without oral argument.  Although phrased as a series of objections to the ruling and order, this is actually a motion to reconsider.

The following is the ruling as to the individual issues raised by Mr. DeNoce.

1. <u>The request to terminate is a defective and improper motion for reconsideration</u>

This is seeking a different ruling on the same matters that the Court determined at the hearings on Jan. 8 and Feb. 12 and which the Debtor and his counsel agreed to. The Court would not explain its ruling as to why this was not a motion to reconsider. The Court acknowledges that DeNoce needed access to the SSA file to prove his case and the Court was well-aware that DeNoce had previously been granted access and had destroyed what he had been given.  Nonetheless, it ordered that DeNoce could have access to the entire SSA file.

DeNoce then goes through the same arguments as previously.

Ruling:  At the time of the prior hearings, it appeared that Neff was agreeing to reissue his consent to the SSA records.  But he changed his mind and later refused. On that ground, the Court ruled that he was not required to give consent and that because of DeNoce's destruction of the prior production, the Court could not tell what he received and what he did not receive.  This is all described in the May 9 ruling.

The request to terminate was not a motion to reconsider.  There had been changes since the initial hearings, much of it concerning the possibility to examine Dr. Bilik.  This is also set forth in the May 9 ruling.

2.  Discovery was not closed as to the SSA Files

The Court is aware that there is a disability determination that has never been produced to DeNoce, but Neff has certainly received a copy of it.  The Court previously ordered that the full SSA file be obtained by DeNoce, but now the Court has reversed its determination.  The SSA Decision goes to the very heart of the case.

The Court has known that we are in trial and thus could not just "forget" that discovery was previously closed since that is the normal practice.  But discovery was not closed because there was a motion for new trial and the Court reopened discovery as to several witnesses, including Doctors Goldsmith and Bilik, who were the SSA employees who evaluated Neff.  DeNoce specifically subpoenaed the SSA file from

these SSA employees and so it is inconceivable that the Court would not expect DeNoce to subpoena all SSA files from these SSA employees, to review them for their testimony.  The subpoenae were the bases of the contempt motion against Bilik and so it is inconceivable that the Court did not carefully scrutinize them.  The Court never mentioned that discovery was closed.

Ruling: The trial was allowed to be reopened for the limited purposes of examining several medical doctors, including the SSA review psychiatrist (Dr. Bilik).  It was proper to keep discovery open as to Dr. Bilik's records, which were in Dr. Bilik's control and copies of which had not been previously admitted in that they are hearsay.  The actual issue was the admissibility of Dr. Bilik's review of Dr. Goldsmith's report.  Dr. Bilik never met Neff or examined him.  There is and was no reason to believe that Dr. Bilik has a copy of the final SSA determination or anything other than Dr. Goldsmith's report and his own notes (if any) and report.  For that reason, although discovery was opened in a limited fashion, it was never reopened as to the SSA itself.  However, had Neff consented to a turnover of the SSA files, that would have been both encouraged and allowed.  But in the end, he did not.

3. The entire SSA files were always fully discoverable and expressly approved by the Court for DeNoce to subpoena for the new trial

The subpoenae for Goldsmith and Bilik required them to bring a list of records that included "disability records, SSA records, or any records of any nature regarding Ronald Neff."  DeNoce then summarizes the history of the SSA records and argues that he did not know that he had not received everything before he destroyed what he got.  Only after the SSA attorney said that he had to specifically ask for each type of document did he know that he had not received everything,

Ruling: The subpoenae were of the doctors, not of the SSA.  There is no reason to believe that Dr. Bilik or Dr. Goldsmith ever had any SSA records other than those they, themselves, prepared.  Certainly they did not have SSA analysis, which was the basis of the disability determination by the SSA, which was no doubt made after they had filed their reports with the SSA.

The issue of whether DeNoce should have been aware that he did not receive everything in the SSA production is fully discussed in the May 9 ruling and there is nothing more to add.

4. The May 9 ruling subtly mischaracterizes events leading up to the orders for new
   releases to get all of the SSA records

This motion argues that the Court "ordered" Neff to cooperate in obtaining the entire SSA file once it appeared that it may not have been fully produced in the initial production.  The Court accepted this as a solution to the OSC brought by the SSA. DeNoce dropped his OSC because of this solution.

Ruling: It is clear from the transcript, that the Court accepted Neff's agreement to sign a new release.  But later when he refused to do so, the Court determined that it had no authority to force him.  DeNoce specifically did not drop his OSC.  He was given an unlimited time to move forward in the district court to seek an order that the SSA require Dr. Bilik to comply with the subpoena.  He has not done so.  As to Dr. Goldsmith, who is deceased, his office never responded to the subpoena and DeNoce has never sought to enforce it.

5. The Court's inconsistent positions about the evidence objections.

The Court closed the evidentiary examinations without argument.  There are still some evidentiary objections to Attending Physician Statements that are pending, but the Court disallowed them in the May 9 ruling.

1

2   Ruling: The Court has not ruled on the admissibility of the Attending Physician

3   Statements and specified that this would be considered at final arguments.  It needs to

4   be done in open court, page by page.

5

6   6.  Obtaining a new expert

7   The new expert is limited to reviewing the Goldsmith and Bilik reports.  S/he needs

8   to review the entire SSA file, just as they were available to Goldsmith and Bilik when

9   they wrote their reports.  Also the Court does not want the new expert to know of Neff's

10  history of fraud conviction, drug abuse, Dental Board discipline, etc.  The information

11  available is to be sanitized.  At the continued trial, DeNoce should be able to notify the

12  expert of Neff's true history, which are questions that he would be able to ask Bilik and

13  Goldsmith if they were on the witness stand.  The Court is interfering with work product

14  privilege.  DeNoce should be able to communicate with his expert but provide a

15  summary of that to the Court in camera.

16

17  Ruling:  DeNoce had the opportunity to hire an expert to conduct a psychiatric

18  examination of Neff, but failed to go forward with the examination.  The current expert is

19  a replacement for Bilik and, to some extent, Goldsmith (who died prior to this trial).

20  There is no showing that Bilik had any information other than Goldsmith's report.

21  Therefore, it is appropriate to limit this new expert to that (and also allow him/her to see

22  Bilik's and Goldsmith's reports).  As to examination on the stand, that will be determined

23  at a later date and was not part of the May 9 order.

24

25  7.  The request for courtroom video is relevant

26  The courtroom video would show that Neff is not disabled by his posture.  It refutes

27  that Neff claims that he cannot even hold a desk job.  DeNoce disagrees with the

28  Court's ruling on this as evidence.

1

2  <u>Ruling</u>:  there is nothing to add to my ruling of May 9.

3

4  8.  <u>Unethical practices are part of this case</u>

5  As previously argued, DeNoce feels that Kwasigroch has acted unethically and

6  brings up prior rulings by Judge Kaufman and an alleged sanction by the BAP.  This has

7  been previously discussed by this Court and will not be further considered in this matter.

8

9  <u>FINAL DETERMINATION AS TO THE OBJECTIONS/MOTION TO RECONSIDER</u>

10  For the reasons stated above, each of the "objections" in this motion to

11  reconsider are overruled and the entire motion is denied.

12

13  ###

14

15

16

17

18

19

20

21

22

23

24  _____

25  Date: June 20, 2019              Geraldine Mund
                                     United States Bankruptcy Judge
26

27

28