**FILED & ENTERED**

**JUN 24 2020**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** fisherl    **DEPUTY CLERK**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>Ronald Alvin Neff<br><br>Debtor(s). | Case No.: 1:11-bk-22424-GM<br><br>CHAPTER 7<br><br>**TENTATIVE RULING ADOPTED BY THE COURT AS ITS MEMORANDUM OF OPINION CONCERNING THE MOTION FOR ATTORNEY FEES AND COSTS AGAINST DOUGLAS DENOCE AND THE BANKRUPTCY ESTATE AS COSTS AND AS A SANCTION IN THE SUM OF $77,547 [DKT. 578]**<br><br>Date:    June 23, 2020<br>Time:    10:00 AM<br>Courtroom:  302 |

THE COURT ADOPTS THE FOLLOWING TENTATIVE RULING AS ITS MEMORANDUM OF OPINION CONCERNING THE MOTION ON DKT. 578.

*PLEASE NOTE THAT FOR SOME REASON THE MOVING PAPERS AND THE TRUSTEE'S RESPONSE SPELL MR. DENOCE AS Denoce.  HOWEVER HE USES THE SPELLING AS DeNoce.  THE COURT IS ADOPTING THE LATTER.*

The Motion

Ronald Neff seeks at least $77,547 for attorney fees and costs and as a sanction based on the court's inherent power and as reserved by the court in its ruling on the motion for new trial granted by the court after trial in November 2017. This is directed at both Douglas DeNoce and the bankruptcy estate. The court is requested to take judicial notice of the entire file. Neff asserts that this is due to the improper and bad faith conduct of DeNoce on behalf of himself and of the Trustee.

The motion refers to 11 USC §105(a); Fed.R.Bank.P. 9011, *Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991) and *Leon v. IDX Sys. Corp.*, 464 F.3d 951 (9th Cir. 2006).

DeNoce's actions show a continued pattern and practice of bad faith conduct. He was not intending to get to the heart of the matter or of the present case, but to use the proceedings to harass, delay, and vex the Debtor due to the personal animosity that DeNoce has for Neff.

As shown in the Memorandum of Opinion (entered 1/6/20), there were numerous instances of "destruction of evidence, breach of court orders, misrepresentations to the court, blatant inconsistencies in Mr. DeNoce's representations." Beyond that, the court allowed DeNoce to subpoena Doctors Okhovat and Hersel. Their testimony bolstered the Debtor's claim of disability. DeNoce has stated his extensive experience as a medical malpractice attorney with much claimed trial experience. Thus the purpose in having Doctors Okhovat and Hersel appear twice – in that they hurt DeNoce's case - was only harassment and bad faith.

DeNoce chose to try to prove that Neff had hoodwinked the Social Security Administration and that they did not do their job. He didn't come close because the overwhelming evidence was that Neff had been disabled for years before he filed bankruptcy in 2011.

The Trustee authorized DeNoce to act as he did. [*The Court notes that Mr. Kwasigroch contended that DeNoce was disbarred and has a felony record. The Court is aware that DeNoce is no longer a licensed attorney, but has no evidence that this is*

-2-

*because he was disbarred and also has no information about a felony record. Even if true, criminal convictions that occurred over 10 years ago are generally not admissible. FRE 609. Thus this comment is not being considered.*]

This case has dragged on for seven years, during which Neff has been denied funds that he desperately needed. Rather than obtain the direct evidence to rebut the presumption, DeNoce went on a "wild goose chase" hoping to find that the SSA made a mistake or that Neff got his disability payments by fraud. Even if he had obtained this, the burden still required proof of employment and the amount of income that Neff was likely to earn. No evidence was presented except that the Debtor might earn $7,200 per year, which is below the poverty level.

While Neff requests an award of the full amount incurred, minimally he seeks the fees for the time spent since the first trial because this was, ultimately, as waste of time. The attached time records start with the first status conference after the case was remanded back from the BAP. It can be argued that the objection to the enhanced homestead was a valid claim prior to the BAP decision, but DeNoce never attempted to present evidence on the second prong (employability and potential income from jobs for the Debtor).

Trustee's Opposition

There are no allegations or evidence of sanctionable conduct by the Trustee or estate. There is no legal theory as to why the entire creditor body should be liable for the unilateral actions of one creditor. The Trustee never filed an objection to Neff's claim of exemption and never authorized DeNoce to do anything on his or the estate's behalf. The settlement agreement with DeNoce reduced and resolved all claims that DeNoce had against the estate. As a creditor, DeNoce is a "party in interest" and has a right to litigate the homestead exemption in that capacity. If DeNoce acted wrongly, it is solely his responsibility.

The original objection to claim(s) was filed by DeNoce in August 2012 (dkt. 87) and included objections to other claims as well as the homestead one. The court granted in part and denied in part DeNoce's objections. (dkt. 147) This was appealed, reversed and remanded as to the homestead exemption.

In January 2013 the Trustee and DeNoce entered into a settlement agreement to resolve DeNoce's claims against the estate and to "significantly limit DeNoce's standing to continue to be an active creditor in the bankruptcy case." (dkt. 151) It was approved by the Court (dkt. 172). It specifically allowed DeNoce in his individual capacity as a creditor to continue to object to the homestead exemption.

DeNoce was never an agent or representative of the Trustee. The agreement as to the objection to the homestead exemption was only to calculate how much DeNoce would receive from the bankruptcy estate depending on the ultimate resolution of the homestead exemption issue. Creditors have standing to litigate exemption issues on their own behalf and DeNoce has chosen to do so. FRBP 4003. The settlement did not give DeNoce any more rights than he already had. He never did anything on behalf of the Trustee.

Beyond that, the settlement agreement was approved by the Court and the Trustee cannot be held in bad faith for complying with it. *J&S Properties, LLC*, 545 B.R. 91 (Bankr. WD PA 2015).

As to Rule 9011, the motion did not comply with the safe harbor requirements as to the Trustee and thus must be denied.

As to §105 – this is really a 9011 motion and should be declined for that reason. Here the debtor's complaint lies solely with the actions of DeNoce and not the Trustee or the estate. It must be denied.

DeNoce's Opposition

Mr. DeNoce starts with the background prior to this bankruptcy. He lays out a pattern of abuse by Neff and Kwasigroch. He asserts that prior courts have ruled that

their actions denied DeNoce a fair trial and that these were more egregious than what DeNoce is being accused of.

For a year and a half, Neff wasted everyone's time and money through two chapter 13 cases for which he did not qualify and for which he never had a viable plan.

In the present chapter 7 case, the BAP sanctioned Kwasigroch $10,000 for a frivolous appeal in 2012. Kwasigroch altered pleadings in a effort to mislead the appellate court. "Creditor has never done anything even approaching this in the history of these parties."

The motion exclusively relies on the Court's 1/6/20 Memorandum of Opinion (dkt. 572). The errors in the opinion have led to unwarranted conclusions about DeNoce.

As the Trustee pointed out, the movant failed to provide a "safe harbor" notice. Thus he cannot use Rule 9011. This motion sounds like one under Rule 9011 and that is prohibited. The sanctions motion really begins at the Motion for New Trial and the safe harbor warning is due at that point. It was not given.

Debtor filed six motions to terminate, some requesting sanctions. All of these were denied by the Court, which infers that the Court continued to find that the prosecution of the new trial was warranted. This is also res judicata as to issues of the wrongful behavior of the creditor.

It is not intended that the failure to properly pursue sanctions under Rule 9011 then allows the Court to use §105 in its place.[Citing to *In re Proteva, Inc.*, 271 B.R. 569, 573 (Bankr. N.D. Ill. 2001) and *In re Bavelis*, 563 B.R. 672, 689 (Bankr. S.D. Ohio 2017).]

As to the motion for sanctions for the entire case, in the new trial Order, the Court actually deferred ruling on the sanctions issue and allowed Kwasigroch to raise it again if DeNoce's actions warrant it. [dkt. 412, 14: 1-2]

A lot of the delays were due to Neff's behavior. He blocked obtaining the SSA records; he opposed the admission of evidence in the first trial; he required numerous motions and court hearings to have him cooperate by answering discovery and signing

-5-

a release, etc. Neff's answers to discovery were boilerplate objections. It took a year to get responses and then Neff refused to meet and confer with DeNoce to resolve it. This forced numerous discovery motions. When DeNoce prevailed, Neff still did not produce the discovery that was ordered. So DeNoce had to bring more discovery motions and even a motion for contempt. This was incredible stonewalling. Eventually the Court ordered that DeNoce receive reasonable expenses due to the need to file multiple motions to obtain the documents. Neff strung everything out at very little cost because if DeNoce won a sanctions order it would not include attorney fees since he was in pro se.

DeNoce then details the very serious damage done to him by Neff's dentistry while Neff was on drugs. He explains that the damages are continuing to accrue since more surgery is needed, but his current physical condition prevents that. He did not engage in bad faith conduct to pursue his claim, but hoped for recovery of some money to enable him to repair the damage that Neff did to him.

The Court wanted the parties to mediate with Judge Clarkson just before trial. Obviously the Court felt that DeNoce had a meritorious case. But Neff refused to mediate. DeNoce offered a way to allow Neff to keep his homestead as to all other creditors but that Neff would apparently pay DeNoce enough to fix his mouth. Thus, the trial took place.

DeNoce then goes into the details of the trial. The new trial was forced because Neff unreasonably would not stipulate to the admission of the doctors' records, even though he had already produce them. Because of Neff's hearsay objections, DeNoce had to subpoena the doctors at a new trial. Neff was not a debtor who was seeking to speed up the process and avoid fees. He could have done so by allowing the records to come in. This required the new trial.

The cost of trying to examine the records of Dr. Bilik was required by the Court – which was an incorrect process set forth by the Court. Evidence at the new trial established that Neff may never have been entitled to SSA disability benefits due to his continued illegal drug use. This was not addressed by the Court. Dr. Hersel testified

that Neff injects himself with Versed, which is a powerful illegal drug and has not been prescribed. This alone disqualified Neff from SSA benefits. [*Court: DeNoce refers to a private meeting that he had with Dr. Hersel. This is hearsay and is not admissible at trial or in this motion. Mr. Meyers' opinion as to what an administrative law judge would rule is also outside the record and will not be considered in this matter.*] The Versed is recent and continues. Neff hoodwinked the SSA and continues to do so. [*Court: DeNoce says that there is a further report of Mr. Meyers filed concurrently. The Court does not consider it. At best this is post-trial evidence and is not relevant to the lack of evidence and actions of DeNoce leading up to the trial.*]

DeNoce goes on to argue that the SSA file would show that Neff is not entitled to the presumption. The evidence and witnesses that he brought to the new trial assisted the Court to a resolution of this case, even though it was not in DeNoce's favor.

The American Rule requires each party to bear his own fees and expenses. DeNoce also had a lot of costs. There is no reason to breach the American Rule in this case. DeNoce had every reason to pursue this. Judge Kaufman had ruled in his favor. The BAP did not reverse, but remanded for further findings, which was what Mr. Meyers provided.

DeNoce recovered an added $330,000 for the estate and his pursuit of this objection to exemption saved the estate and other creditors money. The other creditors were primarily other patients of Neff. Neff did a fraudulent transfer on the day that he was supposed to be at the Meeting of Creditors. This should prevent him from being awarded any sanctions. Judge Kaufman knew that Neff and Kwasigroch were not credible. Kwasigroch should have been brought up on charges. DeNoce does not know why this Court has not done so. This was a bankruptcy crime and pales compared to anything that DeNoce has done. DeNoce paid his own attorneys to recover the property and never sought recovery of his fees for this. His zealous spirit that obtained that recovery continued in this lawsuit.

DeNoce then goes into alleged errors made by the Court in its Memorandum of Opinion. [*Court: The following is a summary of the topics, but not a discussion of the content. The ruling on the objection to enhanced homestead is now on appeal and will not be discussed in this motion except as to whether the behavior of DeNoce in the case is sanctionable.*] (1) the first defective SSA release was prepared by Kwasigroch and not by DeNoce. Neff caused a lot of motions around this and should have just signed the first release that DeNoce prepared with the confidentiality agreement. Instead, DeNoce was forced to accept the release prepared by Kwasigroch and that was insufficient. (2) Neff refused to sign the second release, which was prepared in the proper form, even though he had agreed in open court that he would sign it. (3) Kwasigroch filed a last minute motion to exclude Mr. Meyers' testimony.

[*Court: On 3/13/20, DeNoce filed a supplemental declaration so as to put on the record portions of the Debtor's Rule 2004 Examination, Vol II. This is annotated and is part of his argument and deals with evidence of Neff's and Kwasigroch's actions concerning the fraudulent transfer, which is discussed in DeNoce's opposition to this sanctions motion.*]

[*Court: On 3/18/20 DeNoce filed an additional supplemental declaration so as to put on the record the Declaration of Detective Nick Scinocca. Most of this was not admitted into evidence. DeNoce is using it to attempt to show that Neff is or was using Versed.*]

Neff Reply to Trustee

Under the settlement agreement, DeNoce was charged with opposing the enhanced homestead exemption. He acted as the agent of the Trustee for DeNoce's own benefit and for the benefit of the estate. Had he prevailed, the estate would have benefited. Since he did not, the estate should bear the burden.

Neff Reply to DeNoce

-8-

None received as of June 18, 2020.

Analysis

FRBP 9011(c)(1) requires a 21 day "safe harbor" period before a motion for sanctions can be filed with the court.  Both the Trustee and DeNoce assert that this was not complied with and thus the motion is void.  In this case, the motion for sanctions is for past behavior and it is impossible for the "challenged paper, claim, defense, contention, allegation, or denial" to be withdrawn.  At best the Trustee and/or DeNoce could offer to settle this.  However, this does not relieve the movant from having acted timely when the motion for new trial was filed or granted or when the discovery motions, etc. in preparation for the new trial were taken.

> Parties who ask for sanctions under this rule are not permitted to circumvent the safe harbor by waiting until it is too late to withdraw or correct the offending matter." (citations omitted).  A movant cannot deprive the target of the opportunity to escape sanctions by withdrawal or correction.
>
> Since appellants did not have the mandatory opportunity to withdraw or correct the offending papers, Bankruptcy Rule 9011(c)(1)(A) sanctions imposed on Rakita's motion cannot be sustained.

*Polo Bldg. Grp., Inc. v. Rakita (In re Shubov)*, 253 B.R. 540, 545 (B.A.P. 9th Cir. 2000)

Had movant given the safe harbor warning at those times, this could be considered under FRBP 9011.  Since he did not, the motion for sanctions under FRBP 9011 is denied.

As to the use of the court's inherent powers under 11 USC §105, there is no definitive case preventing the granting of these just because the movant failed to comply with the Rule 9011 "safe harbor" provisions.  Section 105 has a bad faith standard that is separate from the Rule 9011 standard.  See for example, *Levinson v.*

*Pengilly (In re Maris)*, 2012 Bankr. LEXIS 2845 (9th Cir. BAP 2012), which considers both provisions even though the movant failed to comply with the Rule 9011 requirements.

Section 105 requires that the Court make explicit findings of bad faith. FRBP 9011(b)(1) is the most relevant section under Rule 9011 [that the document is not being presented for an improper purpose "such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.") These are two separate standards and can be considered separately.

Neff raises the issue of his prior request for attorney fees, made at the time of DeNoce's motion for a new trial. In his opposition to the motion for new trial, Kwasigroch states as an alternative to denying the motion "should the court be inclined to grant any part of Mr. Denoce's motion/motions, the court is asked to reserve the right of debtor and his counsel to seek attorney fees for having to 're-do' what has already, with much painstaking effort, been done." [dkt. 409, p. 10] In my ruling on the motion for a new trial I state: "[a]s to Kwasigroch's request for attorney fees due to this motion, there will be no ruling at this time. It may be raised again in the future if DeNoce's actions warrant it." [Dkt. 412, p. 14]

While this certainly gives warning that Neff may seek sanctions in the future, it is not the kind of warning that complies with FRBP 9011. DeNoce did a poor job of trying this case and – as noted – dragged it out as long as possible, but he did move forward and brought in the evidence that the Court excluded at the trial. He lost, but that alone is not sanctionable under this warning.

Much of DeNoce's opposition is an attempt to put evidence before the Court that he contends should have been considered during the evidentiary hearing and should have led to a conclusion in his favor. This is not relevant to this motion except to Neff's argument that DeNoce had no meaningful underlying case and thus the objection was filed or pursued in bad faith. This argument of good faith is dealt with below. The Court need not and will not consider evidence not before it in the trial, which is now on appeal.

One of DeNoce's arguments is that my denial of the motions to terminate are a res judicata decision of the validity of his case. They are not. I believed that once the case was remanded and I took it over, a full evidentiary hearing was required so that all of the evidence would be put before the Court. Unfortunately, this took two separate sets of evidentiary hearings because DeNoce failed to comply with the rules of evidence, etc. in the first one in that he had not subpoenaed the doctors involved. Although Kwasigroch was not willing to waive this error and allow hearsay to be admitted, I initially ruled in favor of Neff for lack of evidence. I soon granted DeNoce's motion for a new trial and that only ended in late 2019. This is covered in prior rulings and will not be repeated here. The errors were made by DeNoce and it was not Kwasigroch's responsibility to dig him out of the hole that he had dug for himself.

But once I granted the motion for a new trial, it was obvious that the new trial needed to be completed with all of the evidence that the parties could properly put before the court. Anything less would only lead to more appeals and possibly more litigation if the appellate court believed that DeNoce had not had a fair chance to fully present his case. He was entitled to that chance and he received it.

However, that does not mean that I agreed with the delaying tactics used by DeNoce. Until the evidentiary hearing was complete, I was not aware of what evidence he had or did not have. Therefore, I could not rule and thus would not terminate the proceedings. But I was aware that DeNoce was stringing things out as long as possible. As noted in the Memorandum of Opinion [dkt. 572], the critical evidence was never obtained. DeNoce focused on the psychological reports, which were not dispositive of the SSA determination. The records and testimony of Doctors Hersel and Okhovat showed a strong underlying justification for the SSA determination and that Neff is physically disabled from most substantial employment. DeNoce never brought in any evidence of the kind of work that Neff could do and the income that he could earn. But this was not apparent until the conclusion of the evidentiary hearing.

This is all set forth in the Memorandum of Opinion.  What is not set forth and what has never been ruled on are the methods used by DeNoce to delay the trial.  He constantly asked for continuances.  He sought evidence that was not relevant to his case. He destroyed evidence.  Among other things, DeNoce set and then continued or cancelled at least one deposition, he set and then cancelled a psychological examination and he delayed obtaining his expert(s).

These are two men who hate each other.  DeNoce clearly intended to make Neff pay the maximum in attorney fees and to disrupt his life by keeping the litigation going.  He was punishing Neff for the damage that Neff did to him.

Although Kwasigroch also used improper tactics (and was punished for it), this does not relieve DeNoce of his own improper behavior.  This is not a seesaw or scale where you put Kwasigroch's bad acts on one side and DeNoce's on the other side and the one who is lighter can walk away scot-free. Each must bear responsibility for his own actions.

But at the same time, Neff was not cooperative and Kwasigroch played "hard ball" throughout this case.  This added to the toxic atmosphere.

While I am convinced that DeNoce drew this out as long as possible, I am also convinced that some of or at least part of this was in reaction to Neff and Kwasigroch's lack of cooperation.  Unfortunately cooperation is not always required and – while sanctionable under some circumstance – it is not sanctionable in general.  It is hard to measure how much of Neff's lack of cooperation led to DeNoce's frustration and his desire to keep this case alive as long as possible.

Looking at the big picture, the Court does not find that DeNoce acted in bad faith by pursuing this objection to the claim of exemption.  Although the Court ultimately ruled against him, there were real issues here and if DeNoce had done proper discovery and amassed critical evidence, it is possible that he could have prevailed.  The Court will never know whether Neff's SSA disability claim should have been denied and, if so,

what Neff could actually earn.  DeNoce's focus and actions failed to develop and present this evidence in an admissible fashion.  DeNoce suffered the consequences.

Although he argues to the contrary, it should be noted that DeNoce was not being solely altruistic in pursuing this objection as he would have personally received a monetary benefit had he prevailed. Pursuant to the agreement with the OUST, DeNoce would receive a 60% stake in any eventual reduction in the Debtor's claimed homestead exemption.  This is higher than he would receive as a pro rata creditor. [dkt. 151]  This also gave DeNoce a personal stake in aggressively pursuing his objection.  Yes, he hates Neff and did not want to make life easy for him.  But the objection was not brought in bad faith or pursued solely in bad faith.  DeNoce did a poor job of litigating and personally suffered because of it.

Deny the Motion for Sanctions.

###

Date: June 24, 2020

Geraldine Mund
United States Bankruptcy Judge